## Parham *et al.* Appellants, *v.* Randolph *et al.*

| 5 | 435 |
|---|---|
| 77 | 807 |
| 77 | 811 |

A. sold to B. a plantation of six hundred and thirty acres of land with covenants of warranty, together with nineteen slaves, the stock, farming utensils, and growing crop, for a gross amount, for which B. executed his notes payable in instalments. A. represented his title to the land to be good, knowing it to be defective. There was an out-standing title to five hundred and seventy acres of the land, the owners of which obtained possession after the purchase from A. It was held that a court of equity would grant relief and decree a recision of the contract, after judgment on the notes given to secure the purchase money.

Where, in the sale of land, there has been fraud on the part of the vendor, the vendee will not be compelled to resort to an action at law on his covenants of warranty on failure of title; but may go into equity for relief.

If the facts stated in the bill obviously amount to fraud, it will be sufficient without a direct charge.

Any misrepresentation or concealment by the vendor, in relation to the title of land, by which the purchaser is deceived, is fraudulent.

The vendee will be entitled to relief from the fraudulent misrepresentations of the vendor, in relation to title, although the out-standing title was on record.

Where there has been fraud, it seems, the vendee may be relieved in chancery, notwithstanding there has been no eviction by the paramount title.

If the contract be entire, and there is a failure of title as to part of the land, and the portion lost is essential to the perfect enjoyment of the remainder, in the manner contemplated by the purchaser, a court of chancery will rescind the contract.

In cases of a partial failure of the contract, the weight of authority is, that, the remedy is in a court of chancery.

The statute of this state, gives the maker the same defence against the subsequent holder of the note, which he possessed against the original payee.

APPEAL from the superior court of chancery.

The complainants filed their bill in chancery, and alleged that John F. Broadnax and R. H. Broadnax purchased of respondent, Randolph, a tract of land in Louisiana, containing about six hundred and thirty acres, and took a deed with covenants of warranty; also nineteen slaves on the plantation, and the stock of cattle, horses, &c. and also the crop of cotton then in the field; for the sum of sixty-six thousand dollars. Two payments were made, and Parham and Smith were endorsers on the notes

sought to be enjoined, one of which for $14,000 was transferred to the Planters' Bank, one for $7,000 to the Agricultural Bank, and another for the same amount to defendant, Collier. They also averred that Randolph represented his title as being perfect; that he knew it to be defective, and they confided in his representations and supposed it was so; but that they have since ascertained that he had no title at all to about five hundred and seventy acres, but that the same is owned by one Cowen and wife, whose title was set out, and this they averred was the main inducement for the purchase, which had failed.

The Planters' Bank having obtained judgment, an injunction and recision of the contract is prayed. Randolph conveyed according to the laws of Louisiana by act of sale passed before a parish judge, and the purchasers went into possession; but they aver that Cowen is now in possession under his superior title.— Both titles were traced to Frederick Smith, and derived from the same source. It appeared that Smith conveyed to one Jeremiah Jones, the ancestor of Mrs. Cowen, in 1811. Jones died, leaving two children, Mrs. Cowen, and a son, since dead, and Mrs. Cowen is the sole heir. It also appeared that Randolph acquired title to 570 acres of the land from Smith by deed, dated long subsequent to the deed to Jones, and that Smith at the time informed him that he had no title, having previously conveyed to Jones, but that, notwithstanding, Randolph agreed to give Smith five hundred dollars for his right, whatever that right might be, and risk the title, which Smith agreed to take, and conveyed his "interest" in the land. Jones's title was set out, and alleged to be regularly recorded in the parish of Concordia.

A demurrer was filed to the bill, and a motion made to dissolve the injunction as to the Planters' Bank, which was sustained by the chancellor, and an appeal taken to this court from his decision.

G. S. Yerger, for appellants.

What is meant by an entire contract, in the law, is a contract made at the same time, for several distinct things. Which things may be separated, to be sure, but if in doing so, the main object

[Parham *et al.* Appellants, *v.* Randolph *et al.*]

of the purchase would be defeated, the contract being entire, i. e. made at the same time, and not by several contracts, equity will relieve.

Mr. Chapple says, that although there must be an *eviction*, and there is an averment that Cowen is in possession, claiming under his elder title, yet he says, it is evident Broadnax put him in possession or delivered possession, and this is collusive, &c.

The cases cited in my brief, show that the purchaser may without suit deliver the possession to the rightful owner; and that is an eviction. If the law authorises the purchaser to deliver up possession, when he is satisfied of his superior title, it must be strong logic to prove that it is a fraud, to do what the law says he has a right to do.

Mr. Chapple argues that the court may presume possession, its length, &c. Upon a demurrer, the facts charged are admitted, nothing can be presumed, but what is stated. A jury may presume, or the chancellor might presume upon an issue.

The bill on its face shows Randolph has no title. Suppose it were taken for confessed, would not the court decree against Randolph.

It is first objected that the party has a remedy on his covenants at law. When the remedy at law is imperfect or inadequate, equity will relieve.

Here the sale was land; the deed was recorded; at law the record of a deed would still stand. The main inducement to the purchase failed, because a part is lost for a defective title. In such case, the remedy at law is inadequate, for the party would only recover the value of the land lost, and be compelled to keep the swamp land. Equity, where the contract is entire, and the substantial part fails, will rescind in toto. Fonblanque, 209, note; 2 Kent's Com. 469—476; 8 Com. English Ch. Rep. 576; 2 Equity Digest, 524, p. 25.

Court of law could not order deed to be delivered up, hence the defence cannot be made.

It is next objected that the land lies in Louisiana, and that a court of equity here has no jurisdiction. Equity has jurisdiction of the person, and can rescind or enforce a contract for lands in

37*

another country. 2 Story's Equity, 184, and cases cited; 1 Fonblanqe, 54, note, Grund *v.* Boyce, 3 Peters' Rep.

It is next insisted, that the Planters' Bank are innocent purchasers and cannot be affected, &c. The contract was made in Mississippi, and the notes are payable in the Agricultural Bank of Mississippi. The law of Mississippi, makes the holder take it subject to all equity.

The case in 9 Cranch, only applies to cases where a note is made payable to a particular bank, it is a letter of credit to that identical bank, and if the bank advances money or discounts the paper, it may recover; but as. to other banks or other individuals, it is a different matter, it is no letter of credit to them, and they take it subject to the general rules of law.

A suggestion was made by one member of the court, that Cowen and wife, in whom the outstanding title is, should be parties. For what purpose? They have no interest in the suit. In no one of the cases referred to, where there has been fraud or eviction, has the party holding the better title been brought before the court. The complainant says, you represented the title to be in yourself. I aver it is not, it is in B. This he must prove.

No person must be made a party unless he has an interest that may be affected by the decree. Here Cowen and wife have no interest in the suit; it is a contest solely between the parties on record.

But again, if necessary parties are omitted, it is no cause to dissolve the injunction. The court must always permit parties to be made.

In case of executory contracts, the party although in possession has always the right to file his bill to rescind, for want of title. Yet in no case is it necessary to have the real owner before the court.

Smith's right to the land was confirmed by Congress. He, before the confirmation had a mere equitable right, by virtue of the different acts of Congress, and the report of the commissioners. This right he sold. When the land was subsequently confirmed by Congress, the legal title by relation vested in his vendee. Barr *v.* Gratz, 4 Wheaton, 213; 6 Condensed Rep. 426; Peck's Reports, 16, Johnston *v.* Gunn's lessee.

[Parham *et al.* Appellants, *v.* Randolph *et al.*]

Where a party has an equitable right, which he sells, and the legal right be conveyed to another, with notice of the prior sale, as is charged in this bill, the party who takes the legal title, takes it in trust for the prior vendee, (authorities need not be cited on this point.)

1. Whether a court of equity will relieve a party against the payment of purchase money and rescind the contract of sale, upon the mere ground that there is no title, where deeds with warranty of title, have been taken, and there has been no fraud or eviction, is a point not necessary to be argued.

Chancellor Kent (2 Com. 473,) says the cases leave the law in a painful state of uncertainty. Though he apprehends the true rule to be, where there is neither *fraud* or *eviction*, the party is not entitled to relief against a security given for the purchase money upon the mere ground of the title being insufficient. 2 Com. 471.

On the contrary, the following cases decide, where there is neither *fraud* or *eviction*, the party, in cases of apprehended *eviction*, will be entitled to relief. Gray *v.* Huffnagle, 11 John Rep. 51. Bolvan *v.* Craig, Littel's Select Cases, 407. Christy *v.* Reynolds, 16 Ser. and Rawle, 258. 4 Dessausure, 133—53. 3 Randolph, 44.

2. From an examination, however, of most, if not all the authorities on the point, I believe the rule laid down by Chancellor Kent, in Bumpas *v.* Platner, 1 John Ch. Rep. and Abbot *v.* Allen, 2 John Ch. Rep. that there must be some ingredient of fraud or eviction, is the correct rule, except in cases of actual insolvency, or where a deed of trust is given to secure the purchase money, and the property would be sacrificed for defects in the title, or where the party is in imminent danger from insolvency or removal,—in such cases courts of equity upon the plain and obvious principles on which all *bills quia timet* are sustained, would interfere. Admitting the rule to be, that there must be fraud or warranty, the bill is clearly sustainable.

In Bumpas *v.* Platner, 1 John Ch. Rep. 213, where the party comes into equity for relief upon the mere ground of a failure of consideration, he considers an *eviction* an indispensable part of the complainant's claim. So in 6 Yerger's Rep. 108. Fonblanque's

[Parham *et al.* Appellants, *v.* Randolph *et al.*]

Equity, 372: *side paging.* Such was the decision in 2 Ch. Cases, 19, referred to by him, in the above case. This rule he after a laborious investigation again reiterates in Abbot *v.* Allen, 2 John Ch. Rep. 519, where he says the purchaser cannot obtain relief, upon the mere ground of defect of title without eviction. The question then occurs, is an eviction alleged in the bill? The bill states that Cowen and wife have the right and title and that they are in possession, &c. claiming and holding under their title.

This is an eviction within the meaning of the authorities. A party is not compelled to go to law, where he is satisfied, it will be unavailing. And it is insisted that where the party having the paramount title, is in possession, or where possession has been surrendered to him, or where he has taken possession, in either event, there is an *eviction,* as understood by the law.

In its ancient and more technical sense, a judgment of the court perhaps was necessary, where the vendees by *voucher and warrantee chartœ* were resorted to, but this seems to be wholly abandoned in modern times in a personal action on the covenant. Hamilton *v.* Cutts, 4 Mass. Rep. 349. M. and Yerger's Rep. 55. Hobart's Rep. 26. 4 Term Rep. 618. Randolph *v.* Meeks, M. and Yerger Rep. 58. Duval *v.* Craig, 2 Wheaton's Rep. 61. 4 Con. Rep. 25. 2 Tucker's Commentaries, 465.

3. But we insist, that the bill on its face, contains a direct averment of fraud. It states that Randolph represented that he had a full and perfect title; and it avers, that he knew of the better title in Cowen's wife, that is, he knew of the prior deed made by his vendor, Smith, and consequently knew, that there was a better title out-standing. The law is well settled, that if there is any intentional misrepresentation or concealment, as to the title, the purchaser, although in possession, is entitled to relief in equity in addition to, and beyond the covenants of his deed. This forms an exception to the rule requiring an *eviction.* Co. Littleton, 384, note 332, by Mr. Butler; Abbot *v.* Allen, 2 John. Ch. Rep. 522; Edwards *v.* McLeary, Cooper's Eq. Rep. 308; 2 Kent's Com. 470.

In this case, the facts alleged on the face of the bill, show, that Randolph knew there was a better out-standing title, when he represented that he had a good and perfect title; for at the time

he purchased from Smith, he told him he had previously conveyed
his right.

But if he had no such knowledge, so far as the Broadnax's are
concerned, it makes no difference; for, whether a party misrep-
resenting a fact knew it to be false, or made the assertion without
knowing it were true or false, is wholly immaterial: and even an
innocent misrepresentation of a material fact, on which another
party acts, is equally conclusive, for it is a *fraud* in law, upon
the other party. Story's Eq. 202, sec. 193. In 1 Maddox Ch.
·208, the rule is thus stated, "if indeed a man, make a false rep-
resentation, whether knowingly or not, by means of which he
puts the party bargaining under a mistake upon the terms of the
bargain, it is a fraud and relievable in equity."

These principles are supported and illustrated by the cases of
McKaner *v.* Taylor, 3 Cranch, 270; Rosebelt *v.* Fulton, 2 Cowen's .
Rep. 139, 134, 125; and Lewis *v.* McLemon, 10 Yerger's Rep.
208, 209, to which cases the court is particularly referred.

Mr. Justice Story, (1 Com. on Eq. 218,) says, "if a vendor sells
an estate knowing that he had no title to it, or knowing there
were incumbrances on it, of which the vendee is ignorant, the
concealment of such a material fact, *would clearly avoid the sale,*
*on the ground of fraud." A fortiori* the case is much stronger
where he not merely conceals, but actually represents he has
title, when he knows he has not, or where he conceals the fact of
a previous conveyance, known to·him, even if he had forgotten
it, is no excuse. 10 Vesey, 475, 476.

4. From the above cases it is clear and manifest that a party
in possession may, before eviction, and upon the ground of fraud,
be relieved in equity by having the contract rescinded; and upon
such decree, an account of rents, interest, &c. will be taken, and
possession ordered to be given up, subject however, to any equi-
table lien in favor of the purchaser for purchase money paid. It
remains then to inquire, whether in a case of fraudulent misrep-
resentations, as to title, the fact of the title papers being recorded,
or in other words, whether a party who fraudulently misrepre-
sents his title, can say, "true I was guilty of a false assertion, but
you might have found out it was false, by looking over the regis-

ter's books; and as you might have done so, my fraud is purged."
This doctrine is unsound and vicious in law and in morals. It
makes the law a handmaid to fraud and villany, and ought not
for a moment be countenanced by any judicial tribunal. The
registration acts never were intended to legalize fraud.

Fraud, in the sense of a court of equity, includes all acts, omis-
sions and concealments, which involve a breach of legal or equita-
ble duty, trust or confidence reposed, and which are injurious to
another.   1 Story's Eq. 197.   10 Yerger's Rep. 131.

It is a breach of legal and of moral duty for a vendor to conceal
an incumbrance, although it is recorded.   It is still a greater breach
of legal duty for him to make a representation which is false, and
which in some degree throws the other party off his guard.

In all cases of sale and purchase, there is a mutual confidence
or trust reposed between the parties.   The very purchase, says
Judge Story, implies a trust or confidence on the part of the vendee
that no such defect of title exists.   1 Story's Com. on Equity, 218,
219.

If a devisee represents a will to be duly executed, when it is
not, and thereby gets from the heir a release of his title, pretending
it will facilitate the settlement of the estate, the release will be
void for the fraud, although the heir might have ascertained the
falsity of the assertion by reference to the will.   1 Story, 224, Gor-
don *v.* Gordon.   3 Swanston, Leonard *v.* Leonard.   1 Ball and
Beatty, 171 to 182.

The registration acts are constructive notice, but not actual.
The registered deed operates to bind the title of a subsequent pur-
chaser; the deed being registered, prevents the estate from vesting
in him, and in a question between the subsequent purchaser and
a prior vendee whose deed is registered, it is conclusive on the ti-
tle.   But in a question between the subsequent purchaser and his
vendor, who fraudulently misrepresented his title, the registration
of the deed, or the constructive notice it gives, does not purge the
fraud of the vendor.   The point has been explicitly decided in the
case of Morgan *v.* Elar, 6 Yerger, 108.

5. The bill shows, that the title to nearly all the land purchased,
and that part or portion which formed and constituted the main

inducement to the purchase, is defective. Under such circumstances, the whole contract will be rescinded.  2 Kent's Com. 469 to 476.  8 Con. English Ch. Rep. 516.  2 Equity Digest, 524, p. 25.

Eustis, on the part of the Planters' Bank, Appellees in this case, contended —

1. That the bill is bad on demurrer, as between Brodnax and Randolph, the original vendor and vendee, parties to the contract alleged in the bill.

2. That whatever equity there may be between said parties, it is not available against the Planters' Bank, endorsee of Randolph.

We proceed to consider the first point.  This is a bill brought to rescind a contract.  And upon examination of the allegations of the bill, to ascertain the nature and character of that contract, the court is informed that it was "a contract for purchase" of lands lying in Louisiana.  The words used are significant.  That "the contract for purchase" was made within the limits of Mississippi is the sole fact relied on by appellants to give the chancellor jurisdiction of the matter.  It was not the bargain and sale of the lands which was made in Mississippi, but it was "the contract for purchase," or, in other words, the agreement to sell.— We conceive this to be the true and only meaning of the words, and that the appellants used them advisedly; that they knew that "the contract for purchase" was the only contract to be reached by the chancellor.  We say, then, that it abundantly appears from their bill that of this contract they cannot complain; that on the part of Randolph it was duly and fully executed, by giving possession with deed of warranty, as it appears he did from the bill.  The other party accepted the deed with warranty, and went into possession under it.  And thus, by the action of all parties, "the contract for purchase" was fully executed; and has long been *functus officio :* it has died of itself, and cannot be revived, to be destroyed in a manner more gratifying to appellants.

We contend then that, this contract having been executed, there is no mutuality and dependence between the title and the notes given by Broadnax for the lands lying in Louisiana.  The execution by the purchaser of notes negotiable and payable in bank, and the acquiring and receiving a deed, with full covenants of warranty,

from one who was and still is abundantly able to assure his purchaser, can leave no doubt on the mind of the court that, at the time of the contract of the bargain and sale, it was the intention of the purchaser to look to the warranty for the protection of his title.   And it is to the intention at the time of the contract that the mind of the court should be directed, as well when called on to rescind as to decree a specific performance.

The following rule on that subject will be found in Powell on Contracts, page 26, vol. 2 : " In all cases of covenants, the courts of chancery, on application to have them decreed in specie, consider what was the intention of the parties covenanting ; and if that was, that the parties should rely and depend upon the security of the covenant only, equity will not alter the security agreed to be accepted, or *vary the remedy ;* for that would be going beyond and consequently against the intent of the parties."

And it is laid down in the case of Seymour *v.* Delancy, 3 Cowen, 445, that a court of chancery will, in many cases, not *disturb* an agreement executed, though it might have decreed a specific performance.

Again.  If, (as we have denied) the contracts be mutual and dependent, or constitute one contract, do the allegations of the bill make out a case entitling the appellants to the decree of recision of the contract?

Bills of this description are based "on a combination of the principle, that money ought not to be paid when the consideration has failed, with the apprehension that the party may sustain material injury, if he makes such payment."  2d vol. Tucker, p. 465.— Now, how does it appear in this case that the consideration has failed.   Has there been an eviction, either in fact or in law, or is there an exhibit made of a prior patent, one of those manifestly superior titles, which the chancellor or master could pronounce upon an inspection.   Neither of these things appear from the bill. But, on the contrary, the adverse title is withheld, no exhibit is made of it.   All that is alleged is a conveyance by Frederick Smith (a squatter) of his right to his improvement; before any sale or confirmation of the land to him by the United States.   No possession by the purchaser Jones, is alleged under the alleged conveyance, but on the contrary, it appears from any thing in the bill to the

contrary, that Randolph purchased after Smith had received title from the United States, and possessed it ever since in undisturbed possession.    Thus from the bill, the adverse claim is merely equitable, and has been long barred by prescription.

True, it is alleged, that the adverse claimant is now in possession, how he obtained it we are not informed.    Will the court presume the eviction, or will they not rather, discovering that the fact of possession is expected to aid the complainants in getting rid of the payment of an onerous debt, believe it possible, in the absence of a showing to the contrary, that the adverse claimant is in possession by collusion with the complainants.    Is it not suspicious, that when Randolph, for aught that appears to the contrary, may have been 26 years in possession, and delivered that possession to complainant, yet, when it becomes advantageous to complainant that the adverse claimant should be in possession, he is suddenly found there.    It is well settled, that the party asking equity must not have been guilty of fraud or chicanery, nor delay coming for relief until the situation of parties is so far changed that they cannot be re-instated in their original rights.    McDonald *v.* Neilson, 2 Cow. 130.

We say then, that all the adverse claim which appears from the allegations, is an equitable title long barred and surrendered possession.    And this we contend is insufficient.    The complainants must place themselves in the situation of the person alleged to have the outstanding title.    5 Munf. 295.    In strictness, his demand against the vendor can only arise from eviction, and there could be no eviction without the proof of his better title.

No equitable title can be set up in ejectment in opposition to the legal estate. Jackson *v.* Pierce, 2 J. R. 321 ; Jackson *v.* Chase, *ibid.* 54 ; Jackson *v.* Sisson, 2 J. C. 321.

This, then, is the whole case of failure of consideration, and we say the case is not made out.    Every thing alleged in the bill may be admitted, yet neither this court nor the chancellor can say that the pretended adverse title is better than Randolph's.    Yet this must be shown in order to found any claim for rescinding the contract.    The whole burthen of proof is on the complainants• 5 Mun. 295.

As to the other ground, (fear of sustaining injury,) the warranty of Randolph is a sufficient protection.

But, say the appellants, we will base our claim on the fraud on the part of Randolph, on his false representations, as set out in the bill.   The demurrer admits only the facts stated, not inferences, that the appellants may draw from those facts.   Randolph may have known that there was a rumor of claim, he may have known all that can be learned of the nature of that claim from the complainant's bill, and yet in good faith, and without fraud, have made his title to Broadnax.   All his examination into the subject must have brought him to the conclusion to which this court must come, either that there is no such claim at all, or that it is one which the counsel for appellants fear to en danger by exhibiting it in a court of law or equity, or why is it not found in its place as an exhibit to this bill?   And where is that concealment that usually accompanies fraud?   It appears from the bill that the adverse title, whatever it was, could be found on the records of the parish, in Louisiana, where the land lies.   Can that be concealed which is spread on the records of the country?   Will the court declare it to be fraud to neglect the mention of a claim which, from the showing of the complainants, is of no validity against the legal title, and which was open to the inspection of any person of common intelligence.   See Powel on Contracts, 2 vol. 162 ;  Pulling *v.* Ready, 2 Atk. 591 ; Ambler, 314; Comyn's Dig. Tit. Chan. vol. 2, p. 718.

We believe the cases here cited will abundantly establish the rule, that it is not a *suppressio veri* amounting to fraud, to fail to mention any thing relating to title, which is open to a person of common intelligence.   The statement of the bill that the purchase was made from the *representations* of the vendor, that the title was good, is to be cautiously received by the court.   It is against all experience in the transactions of men.   *Caveat emptor*, says the law,—look to the written and recorded titles.   And it appears that the purchaser wished something further to rely on, inasmuch as he has exacted a warranty from the vendor.

   " In all cases where the purchaser cannot make out a title, but by a deed which leads him to another fact, the purchaser shall

not be a purchaser without notice of that fact, but shall be presumed cognizant of it, for it is *crassa negligentia* that he *sought not* after it." Ambler; 314.

We say then that the misrepresentation alleged in the statement, that " the title was perfect," is not made out by the claim pretended to be discovered by complainants; and that such statement is not inconsistent with the vendor's knowledge of such shadow of a claim. Every year of Randolph's possession, rendered it more dim and improbable.

We proceed to the second point:·

2. That whatever equity there may be between the vendor and vendee, is unavailable against the Planters' Bank.

1. It appears by the bill that the note on which judgment was obtained by the Planters' Bank was made negotiable and payable in Bank. The case of Mandeville *v.* The Union Bank of Georgetown, recognised by the doctrine of this court in the case of McMurran *v.* Soria & Co., at a recent term, is applicable, with peculiar force, to this case. With what propriety do complainants ask of the chancellor to do that, which Judge Marshall has pronounced to be a fraud upon the Bank. The note in this case was discounted by the Planters' Bank. This fact sufficiently appears from the bill, notwithstanding the adroitness of complainants' expression, that Randolph endorsed the note to the Planters' Bank. It is the only mode in which a Bank becomes the owner of the notes of individuals, and if not such owner, it would have appeared in the vigorous resistance made to the recovery at law. The Bank then gave their money on the faith of the statement on the face of the note that it was negotiable, &c., in Bank, which is a written waiver of off-set or defence, between maker and payee. When therefore, in the face of such waiver, complainants appear before the chancellor, with a claim to set up equities, of which the Bank was never apprised, are they not justly liable to the charge of having made false representations—of having misled the Bank. Is it not their statement that induced the Bank to part with its money, and if so, will they be allowed in a court of equity to benefit by a contradiction of that statement?

The case is ten fold stronger in equity, than in a court of law. At law, usury makes void a contract; in equity, the borrower

[Parham *et al.* Appellants, *v.* Randolph *et al.*]

must pay the principal borrowed. The Virginia statute under which the case above cited was made, is if any thing broader than ours. But supposing for argument's sake that the defence is at all available, it should have been pleaded in bar of the action at law. On this head we could easily multiply cases.

"Where a party in a suit at law has knowledge of fraud or other matter of defence, in time to avail himself of it in the trial at law, and neglects to do so, he cannot afterwards obtain relief in equity against the judgment at law, but is forever concluded by the judgment." LeGain *v.* Governeur & Kemble, 1 J. Cases, 436; McVicar *v.* Wolcott, 4 J. R. 510; Bateman *v.* Willoe, Scho. & Lef. 201.

Where a party is sued at law on notes alleged by him to be usurious, and suffers a verdict and a judgment to be taken against him without making any defence, or applying in due season to a court of chancery, he is concluded, and is not entitled to relief in equity. Berry *v.* Thompson, 17 J. R. 436; 3 John. Ch. R. 395.

The bank according to their custom, notify all parties to a note, at the maturity of the same, that it is about falling due. Again they notify them when it is protested. The writ again is notice. And finally on the trial of the cause, the defendants are called upon for their defence. Thus four different periods of time suggest to the party on the note to apprise the bank of his having a defence. And surely after a judgment obtained, such party must be presumed to have waived any such defence. Does it appear by the bill that the matter objected was discovered after judgment. It does not. Your orators "have lately ascertained," is the expression used by complainants. Truly, a most enigmatical expression, of a fact of such vital importance to their case; and must be regarded by the court as an adroit fiction, substituted for a naked statement of the fact. They should have stated to a day *when* it was, they became apprised of the matter now attempted to be set up, against an innocent endorsee, who is not pretended to have had any act or part in inflicting the injury, but who if deprived of the effect of this judgment, is without redress, having no other fund to turn to as the complainants have, in their warranty. That there is no judgment at law against Randolph, that the subpœna in the present case is returned not found as to him,

[Parham *et al.* Appellants, *v.* Randolph *et al.*]

should be considered by the court as showing that he is not within the jurisdiction of the courts of this state.   Let the complainants, and not the Bank, go in search of him.

Again, it appears there are other notes.   In a case in Munford, will be found a decision as follows.   "If I purchase lands for which I am to pay by instalments, and there be a defect of title to part of the land, a court of equity will only enjoin for so much as will be sufficient to indemnify the vendee.   And if one of my bonds be assigned by the vendor, the assignee will not be enjoined in his recovery, if the bonds not assigned are sufficient for my indemnification."   3 Mun. 275.

The parties to the judgment sought to be enjoined by the bill in this case, were, a Bank the plaintiff, an accommodation endorser, defendant.   We regard the decree of the Chancellor dissolving the injunction, as another evidence of the purity of our tribunals from that almost universal excitement, which threatens a denial of rights to corporations, and a destruction of many institutions whose basis is the credit and good faith of the state.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The extent to which courts of chancery will go in giving relief to the vendee of land by preventing the collection of the purchase money, and rescinding the contract, is a question which is much embarrassed by conflicting adjudications.   It has been often litigated, but the numerous decisions seem to have increased rather than diminished the doubts.   Chancellor Kent has given the subject a labored consideration in the 2d volume of his Commentaries, section 39, and he admits that it is "in a state of painful uncertainty."   His conclusion, however, as to the general rule is "that in sales of land the technical rule remits the party back to his covenants in his deed, and if there be no ingredient of fraud in the case, and the party has not had the precaution to secure himself by covenants, he has no remedy for his money even on a failure of title."   This rule arises necessarily from the nature of the contract.   The covenants are intended to secure an ultimate indemnity to the purchaser against incumbrances, or failure of title, in which case the purchaser may have recourse against the vendor. From the nature of the contract, the remedy, like a false warranty

38*

in any other case, is at law.    On the covenant, damages may be recovered commensurate to the injury.    If there are no covenants nor fraud, there is no liability, for the law fixes the extent of the liability by the contract, and it will not suppose an engagement beyond that which is expressed, on the plain principle that the written contract is supposed to express all that the parties intended. The purchaser having an ample and complete remedy at law, he must pursue it in the proper forum. . But the reason of the rule proves that there are exceptions to it.    I shall not attempt to enumerate the several grounds of exceptions.    It is admitted on all hands that they do exist, and I apprehend that they may be most easily ascertained in each particular case by the capacity of a court of law to give ample relief.    When there is fraud in the contract, it is always an exception.    Chancellor Kent in laying down the general rule, predicates it on the supposition or condition that there is no fraud in the case.    And although this might be ground of defence at law, it is also certainly a ground on which chancery will rescind the contract.    For the complainant it is contended that there was fraud practised in this case, and that therefore, the relief ought to be granted. · On the other hand, it is contended that fraud is not directly charged in the bill, and cannot be inferred.    If the facts stated obviously amount to fraud, it will be sufficient.

The bill states that Randolph represented his title as being a good one; and it furthermore states that he knew it to be a defective title.    Both titles are derived from Frederick Smith, so that the titles are traced to the same source.    The validity of title must therefore depend on the conveyances from Smith.    It appears that Smith conveyed to Jeremiah Jones, the ancestor of Mrs. Cowen, in 1811.    Jones died, leaving two children, Mrs. Cowen and a son, who is also dead, and Mrs. Cowen is his sole heir.    It also appears that Randolph acquired title to the 570 acres of land from Smith by deed, dated long subsequent to the deed to Jones, and that Smith at the time informed him that he had no title, having previously conveyed to Jones, but that notwithstanding Randolph agreed to give him five hundred dollars for his right, whatever that might be, and risk the title, which Smith agreed to take, and conveyed to him his interest in the land.    Jones' title is set out and it is said was regularly recorded in the Parish of Concordia.    All

this is of course admitted to be true, by the demurrer to the bill. This chain of facts certainly did amount to a fraud on the Brodnaxes. Randolph's representations as to his title were false; and they were not only false, but he has not even the excuse of ignorance to rest on. He knew that he acquired no title from Smith, and the circumstances under which he purchased, the price he gave, the right he acquired, and the statements made to him, all lead to the conclusion that he intended a fraud on the rights of Cowen; and the sale to the Broadnaxes, without a disclosure of the cloud over his title, can be regarded in no other light than as the consummation of a scheme begun in fraud. Any intentional misrepresentation or concealment in relation to land, either as to quality or title, by which the purchaser is imposed on, is fraudulent; and it is immaterial whether the false representations are intentional or not. If the vendor undertake to make statements, he is responsible for them. 2 Story's Equity, 202; 3 Cranch, 170.

But it is insisted that although this representation was false, it is not a fraud, because Jones's title was on record, and was therefore notice, and at all events that it might have been ascertained, with proper diligence. This is no answer to a fraudulent representation. The confidence with which the purchasers rested on the assertions of the vendor would be but poorly requited by treating it as culpable folly. The doctrine of notice can have no such application as between vendor and vendee.

It is further insisted that there has been no eviction, and there is therefore no relief in chancery. It is laid down in 1 J. C. Rep. 213, and 2 J. C. Rep. 519, that if there is no eviction, in an executed contract, the purchaser must resort to his covenants, but this rule is certainly not without its qualifications. In the last mentioned case, Chancellor Kent reviewed the authorities fully, and his conclusion is, that if there be *no fraud*, the purchaser must resort to his covenants, if he fears a failure of title, and wishes relief before eviction. Now what is the irresistible inference from this decision? It is plainly this, that if there be fraud, he may resort to chancery, even before eviction, for it is only where there is *no fraud* that he must resort to his covenants.— In the case cited, an outstanding title, but no fraud, was alleged,

and it did not appear that any steps had been taken, or claim made by the holder of the outstanding title; and it was only under such circumstances that the chancellor held that the remedy was on the covenants. And he puts the rule under such circumstances on condition that there be no fraud in the transaction.— The case before us differs from the one decided, in another respect. Although we do not know whether there has been a legal eviction, yet Cowen is in possession, asserting his claim. Here there is an outstanding title clearly shown and admitted by the demurrer, and the holder of that title making claim under it. In such a case it seems to be admitted, in the case cited from 2 J. C. Rep. that this will be sufficient, even without fraud, to justify a resort to chancery.

But there is another ground taken in this bill, which brings it within another exception to the general rule. It is alleged that the main inducement to the purchase has failed. The contract was for six hundred and thirty acres of land, nineteen negroes, stock of cattle and horses, farming utensils and growing crop, for the gross sum of sixty-six thousand dollars, without fixing a particular price on any one thing. This was an entire contract, with partial failure of consideration. It would be impossible, as it is presented to us, to consider it divisible, and if the main inducement to the contract has failed, the jurisdiction of the court of chancery is undoubted. That the main inducement to the contract has failed, is shown by the facts as well as by the averment in the bill. A farm of 630 acres was conveyed, of which 570 acres are covered by an outstanding title. As a farm, the balance could be of little use to a planter, and the residue, it is said, is mostly untillable. It is obvious that it was purchased for the purpose of cultivation, and it is also obvious that its value is wholly destroyed for that purpose. Suppose the complainants were to resort to their covenants, the measure of recovery would probably be only the purchase money and interest, for the 570 acres, and the balance of the property could not be used as originally designed. But there is nothing in this contract by which the price of that 570 acres could be ascertained, and there can therefore be no reason for sending them to their covenants. This question was fully examined by the Lord Chancellor, in the case of Casa-

major *v.* Strode, 8 Con. Eng. C. Rep. 516, and his conclusion is very satisfactory. It is this; that all the circumstances are to be inquired into to determine whether the contract is entire, and the two parcels complicated together, and upon the whole transaction the court will determine two questions, to wit: "Did or did not the party purchase the one with reference to the other?"— "Would he or would he not have taken one had he not reckoned on having the other?" The language of Chancellor Kent is no less explicit. He says, "the good sense and equity of the law on this subject is, that if the defect of title, whether of lands or chattels, be so great as to render the thing sold unfit for the use intended, and not within the inducement to the purchaser, the purchaser ought not to be held to the contract, but be left at liberty to rescind it altogether." 2 Kent, 475. The rule cannot be made plainer. From these authorities, it is evident that if the contract is entire, and the portion lost is essential to the perfect enjoyment of the remainder in the manner intended, then the contract should be rescinded. It is not the quantity lost, so much as its importance on the whole contract, that is to be considered. It requires no argument to show the entire application of this rule to the case before us.

But there is another reason which might be urged in favor of the jurisdiction of a court of chancery over the present case. It is not a total, but a partial failure, and certainly the weight of authority is, that in such cases the remedy is in chancery. This is the rule in England, and it was adopted by the supreme court of the United States in a case reported in 2 Wheaton, 13. As a defence, to prevent circuity of actions, in New York, partial as well as total failure may be relied on at law. To this I can perceive no great objection when it can be made effectual; but certainly when the defence cannot be fully made at law, there is nothing to preclude a resort to chancery.

It is further insisted that the Planters' Bank is an innocent holder, and cannot be affected by the failure of title. This position is however untenable. The statute gives the maker the same defence against the holder that he had against the payee of the note. These notes were made payable at the Agricultural Bank, and in regard to the note held by that Bank the decision

[Parham *et al.* Appellants, *v.* Randolph *et al.*]

in Mandeville *v.* The Union Bank of Georgetown, 9 Cranch, would be an authority in favor of the right of the Bank to recover, notwithstanding the failure of consideration. I confess that I am somewhat at a loss to reconcile that decision with the statute of this state, and the practice under it, although it seems to have been made under the statute of Virginia, which is similar. Without overruling the decision, I am inclined to retain the injunction on the whole case until it can be further investigated, and for the reasons given, the decree of the chancellor dissolving the injunction must be reversed, and the cause remanded.

Judge Turner gave no opinion.